<u>NOT FOR PUBLICATION</u>



**FILED**
JAMES J. WALDRON, CLERK

**MAY 8, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re:<br><br>**GEORGE A. NADER,**<br><br>                      Debtor. | Case No.:  11-13042 (DHS)<br><br>Adv. No.:  11-01754 (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J. |
| **JOSEPH M. SUKOLA and<br>MARY LEE GORSE,**<br><br>                      Plaintiffs,<br><br>    v.<br><br>**GEORGE A. NADER,**<br><br>                      Defendant. | |

<u>**OPINION**</u>

**APPEARANCES:**

| | |
|---|---|
| Porzio, Bromberg & Newman, P.C. | Webber McGill, LLC. |
| John S. Mairo, Esq. | Douglas J. McGill, Esq. |
| 100 Southgate Parkway | 760 Route 10, Suite 203 |
| Morristown, New Jersey 07962 | Whippany, New Jersey 07981 |
| ***Counsel for Plaintiffs*** | ***Counsel for Defendant*** |

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment by the Defendant-Debtor, George Nader ("Debtor"), seeking to establish a debt owed to Joseph Sukola and Mary Lee Gorse ("Plaintiffs") as dischargeable under the Bankruptcy Code. The Plaintiffs oppose the motion, alleging that the debt was a result of fraud and consequently is nondischargeable pursuant to 11 U.S.C. § 523 of the Bankruptcy Code.

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In May 2005, the Plaintiffs entered into a construction agreement ("Construction Agreement") with the Debtor's wholly owned company, Nader Homes, Inc. ("Nader Homes"). (Pls.' Br. in Opp'n. to Mot. for Part. Summ. J., p. 3) ("Pls.' Br.") The Plaintiffs allege that they were induced to retain the services of the Debtor and Nader Homes because of the Debtor's representation of his educational history, experience in the field of building new homes, and the experience of his staff. (Pls.' Br., p. 4) The Construction Agreement stipulated that the Plaintiffs would pay Nader Homes the sum of $778,836 to build a single family home. (Pls.' Br., p. 4) The Plaintiffs allege that upon completion of the house, the Debtor caused hundreds of thousands of dollars in damages because of defects and unfinished work throughout the house. (Pls.' Br., p. 4) On October 13,

2006, the Plaintiffs brought suit in the Superior Court of New Jersey, against the Debtor and Nader Homes, alleging damages as a result of negligence and defective construction. (Def.'s Br. in Supp. of Mot. for Summ. J., p. 1) ("Def.'s Br.") During discovery, the Plaintiffs identified numerous alleged misrepresentations made by the Debtor and Nader Homes.[1] (Pls.' Br., p. 5) Thereafter, the Plaintiffs amended their complaint to include allegations of fraud and violations of N.J.S.A. § 56:8-19, New Jersey's Consumer Fraud Act ("CFA"). (Def.'s Br., p. 1)

On March 15, 2010, the Plaintiffs and the Debtor entered into a settlement agreement ("Settlement Agreement") in the state court litigation that obligated Nader Homes to make monthly payments to the Plaintiffs. (Def.'s Br., p. 2) The Debtor guaranteed this obligation in the event that a judgment was subsequently entered against Nader Homes for failure to make payments under the Settlement Agreement. (Pls.' Br., p. 5) The Plaintiffs expressly reserved their right to file a nondischargeability complaint under Section 523(a) of the Bankruptcy Code, should Nader Homes default on its payment obligations and/or file for bankruptcy.[2] Thereafter, Nader Homes defaulted on the Settlement Agreement and the Plaintiffs obtained a judgment against Nader Homes in the amount of $482,000 by Order dated January 11, 2011 and a final judgment of $491,550.90, including interest, was entered on January 23, 2011. (Pls.' Br., p. 7)

---

1 The Plaintiffs allege that discovery in the state court action revealed that the Debtor's misrepresentations include the following: (1) the Debtor represented he had a Master's degree from the University of Michigan, however, no such degree was obtained; (2) Nader Homes's website represented the Debtor had obtained a Master's degree from the University of Michigan, however, no such degree was obtained; (3) the Debtor represented that his project manager had 35 years of experience constructing single family homes, however, his experience in the field of home construction was less than 5 years; (4) the Debtor represented that his staff architect had 25 years of experience in residential and commercial design, however, the Plaintiffs allege that no evidence was presented to show that the architect had any substantive experience in the field; and (5) Nader Homes's website represented before and after photos of alleged projects constructed, however, deposition testimony affirmed that various photographs were doctored and misleading. (Pls.' Br., p. 5-6)

2 The Settlement Agreement reads, in pertinent part: "Nothing herein contained shall be construed as precluding Plaintiffs from asserting, in the event of payment default under this Agreement and/or a bankruptcy filing by Nader Homes, that the debt to Plaintiffs pursuant to this Agreement is nondischargeable under Section 523(a) of the U.S.

On February 3, 2011, the Debtor filed a voluntary petition under chapter 7 of the United States Bankruptcy Code. (Pls.' Br., p. 7) The Plaintiffs timely filed this adversary complaint ("Complaint"), alleging that the Debtor's debt was nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6). (Pls.' Br., p. 7) The Complaint also sets forth a cause of action under an "alter ego" theory and for violations of the CFA. (Def.'s Br., p. 2) On December 9, 2011, the Debtor filed the instant motion for summary judgment seeking a determination that the debt owed to the Plaintiffs is dischargeable under the Bankruptcy Code. (Pls.' Br., p. 1)

## DISCUSSION

### I.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). "Only evidence admissible at trial may be used to test a summary judgment motion. Thus,

---

Bankruptcy Code." (Pls.' Br., p. 7)

evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then shifts to the non-moving party to "make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248. Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken

6

together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.     Plaintiffs' Section 523(a)(2)(A) Claims

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt shall not be dischargeable in a bankruptcy proceeding "to the extent" that the debt is "for money . . . obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Central to a section 523(a)(2)(A) claim is that there must exist a misrepresentation. *In re Hilley*, 124 Fed. Appx. 81, 82 (3d Cir. 2005). The plaintiff bears the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991). Further, the doctrine of claim preclusion does not prevent a bankruptcy court from looking outside the record of a state court proceeding and subsequent documents involved in a settlement agreement to determine whether a debt was obtained by fraud. *Brown*, 442 U.S. at 132 (holding that a debt for money promised in a settlement agreement accompanied by the release of the creditor's underlying tort claims falls within the purview of section 523(a)(2)(A) and can amount to a debt for money obtained by fraud). Further, in *Archer v. Warner*, 538 U.S. 314 (2003), the Court found that section 523(a)(2)(A) governs debts that are embodied in an agreement that settles a creditor's previous claim for "money . . . obtained by . . . fraud." *Id*. at 316, ("In our view, [section 523(a)(2)(A)] can cover such a debt . . . .").

In *Archer*, although the plaintiffs expressly released their state law claims in a settlement agreement, they were not subsequently barred from showing that the settlement debt agreed upon was for money obtained by fraud. *Id.* at 317. Thus, despite the plaintiffs' express release of their state law claims and the lower court's finding that the settlement agreement created a "new" dischargeable debt, the Supreme Court ultimately held that the debt *could* have been considered to be nondischargeable pursuant to section 523. *Id.* at 323. Simply put, the Court held, under the *Brown* Court's governing precedent, when a settlement agreement accompanied by the release of a plaintiff's underlying tort claims amounts to a certain money debt, the same settlement agreement can amount to a debt for money obtained by fraud within the ambit of section 523(a)(2)(A). Further, *Brown's* principle that "the mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt," weighs heavily in the Plaintiffs' favor. 442 U.S. at 138.

The circumstances in both *Brown*[3] and *Archer*[4] are strikingly similar to the case at bar. Here, the Plaintiffs filed a state court suit seeking money they claimed the Debtor and Nader Homes had obtained through fraud. Pursuant to a settlement on March 15, 2010, the court entered a consent decree based on a stipulation that the Plaintiffs expressly reserved their rights to file a nondischargeability action as it related to the Debtor, should he subsequently file for bankruptcy.

---

3 In *Brown*, the Court described the circumstances as follows: (1) *A* sues *B* in state court seeking money that (*A* says) *B* obtained through fraud; (2) the state court entered a consent decree embodying a stipulation providing that *B* would pay *A* a fixed sum; (3) neither the decree nor the stipulation indicated the payment was for fraud; (4) *B* did not pay *A* pursuant to the agreement; (5) *B* entered bankruptcy; and (6) *A* asked the bankruptcy court to look behind the decree and stipulation and to hold that the debt was nondischargeable because it was a debt obtained by fraud. 442 U.S. at 128-29.

4 In *Archer*, the Court described the circumstances as follows: "(1) *A* sues *B* seeking money that (*A* says) *B* obtained through fraud; (2) the parties settle the lawsuit and release related claims; (3) the settlement agreement does not resolve the issue of fraud, but provides that *B* will pay *A* a fixed sum; (4) *B* does not pay the fixed sum; (5) *B* enters bankruptcy; and (6) *A* claims that *B's* obligation to pay the fixed settlement sum is nondischargeable because, like the original debt, it is for "money . . . obtained by . . . fraud." 538 U.S. at 317-18.

The Debtor argues that neither *Brown* nor *Archer* applies here because, under the Settlement Agreement, only Nader Homes was liable for the settlement payment of the Plaintiffs' claim. The difference between the case at bar and *Brown* and *Archer* is that here, the Settlement Agreement was made between the Plaintiffs and Nader Homes, the Debtor's wholly owned company, rather than directly between the Plaintiffs and the Debtor. However, the difference is not determinative as a matter of law. To find *Brown* and *Archer* inapplicable would undermine the purpose of section 523 and the Supreme Court's reasoning. Under the Settlement Agreement, the Plaintiffs expressly preserved the right to pursue a nondischargeability action pursuant to section 523. Therefore, further inquiry is appropriate and summary judgment is not proper at this time.

### III.    Plaintiffs' State Law Consumer Fraud Act ("CFA") and "Alter Ego" Theory Claims

Under New Jersey law, a settlement agreement is a form of contract. *Mortellite v. Novartis Crop Prot., Inc.*, 460 F.3d 483, 492 (3d Cir. 2006). Courts must look to the general principles of contract law to resolve disputes over a settlement agreement. *Mortellite*, 460 F.3d at 492. Although the plain language of a settlement agreement is given a presumption of validity, there is an exception to this presumption where one party has alleged fraud in the inducement of the contract. Where a prepetition fraud claim is settled and reduced to an obligation pursuant to a settlement agreement that also released the prepetition fraud claim, a bankruptcy court may look beyond the agreement to determine whether the debt can be classified as nondischargeable. *See Brown*, 422 U.S. at 138 (stating that the mere fact that a conscientious creditor has reduced his [fraud] claim to a judgment should not bar further inquiry into the nature of the debt); *Archer*, 538 U.S. at 321 (substituting the word "settlement" for the word "judgment" in *Brown's* holding, and finding that the *Brown* Court's reasoning governed); *In re Hawkins*, 231 B.R. 222, 231 (D.N.J. 1999) (concluding that a "pre-

petition state court judgment does not have a res judicata effect on a subsequent dischargeability proceeding in bankruptcy court").

Further, the Economic Loss Doctrine prohibits a creditor from recovering in tort economic losses to which he is entitled solely through contract. *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 244 (3d Cir. 2010); *Saltiel v. GSI Consult., Inc.*, 170 N.J. 297, 310 (2002). The purpose of the doctrine is to strike an equitable balance between countervailing public policies that exist in tort and contracts law. *Travelers Indem. Co.*, 594 F.3d at 244. However, federal courts in this district have allowed fraud claims to proceed alongside breach of contract claims when they arise out of fraud in the form of inducement or pre-contractual misrepresentations. *Vukovich v. Haifa, Inc.*, 2007 WL 655597 (D.N.J. Feb. 27, 2007). The question then becomes whether "the conduct is extraneous to the contract." *Id.* at *7. Thus, a mere subsequent failure of a promisor's obligation to do what he has promised is prohibited in recovery in tort. *Id.*

In *Archer*, the Court acknowledged that the settlement agreement and promissory note, coupled with broad language of release, "completely addressed and released each and every underlying state law claim." 538 U.S. at 318-19. Further, the Court recognized that the agreement left only one relevant debt, which was a direct result of the settlement agreement itself. *Id.* at 319. However, the Court accepted the need for further inquiry so as to determine whether the debt could also amount to a debt for money obtained by fraud, within the purview of the *nondischargeability* statute. *Id.* (emphasis added).

In the case at bar, although there may be a genuine dispute as to whether the Plaintiffs relied on the Debtor's purported oral and written misrepresentations that were made prior to entering into the Construction Agreement, the Plaintiffs expressly released all state law claims against the Debtor

in the Settlement Agreement, with prejudice. Thus, the Plaintiffs completely addressed and released each and every underlying state law claim, including those pertaining to the CFA and an "alter ego" theory. Although this Court has determined that it can look beyond the scope of a prior settlement agreement to determine whether a debt can be considered nondischargeable pursuant to section 523, it has not held that it can hear prior state law claims that were expressly released pursuant to a prior settlement agreement, with prejudice. Thus, the Debtor's motion for summary judgment as to the Plaintiffs' state law claims is granted.

### IV.   Plaintiffs' Section 523(a)(4) Claims

Section 523(a)(4) of the Bankruptcy Code provides that an individual debtor is not discharged from any debt for "(i) fraud or defalcation while acting in a fiduciary capacity" or "(ii) embezzlement while acting in any capacity . . . ." 11 U.S.C. § 523(a)(4). The scope of the term "fiduciary" in the context of section 523(a)(4) is limited to "instances involving express or technical trusts." *In re Casini*, 307 B.R. 800, 817 (Bankr. D.N.J. 2004). Thus, an officer of a company may be liable where he misappropriated corporate funds. *In re Schultz*, 46 B.R. 880, 890 (Bankr. D. Nev. 1985). Although the Third Circuit has yet to define defalcation, other circuits have defined it as the "misappropriation of trust funds or money held in any fiduciary capacity; [the] failure to properly account for such funds." *See In re Tamis*, 398 B.R. 124, 130 (Bankr. D.N.J. 2008); *In re Lewis*, 97 F.3d 1182, 1186 (9th Cir. 1996). To successfully bring a claim of defalcation, a plaintiff must prove that: (i) a fiduciary relationship existed, and (ii) that a fraud or defalcation occurred while the defendant acted in a fiduciary capacity. *In re Tamis*, 398 B.R. 124, 130 (Bankr. D.N.J. 2008). In addition, New Jersey bankruptcy courts have determined that a fiduciary relationship between directors and creditors "arises in a closely held corporation upon the company's insolvency,

however, such fiduciary relationship does not fall within the ambit of a Section 523(a)(4) claim." *In re Stamou*, 2009 WL 1025161, at *5 (Bankr. D.N.J. Mar. 19, 2009). To prove that a debtor committed embezzlement pursuant to section 523(a)(4), a plaintiff must establish that: (1) the debtor was entrusted; (2) with property; (3) of another; (4) which the debtor appropriated for his own use; and (5) with fraudulent intent." *Islinger v. Hillisheim*, 2011 WL 1332185, at *3 (Bankr. D.N.J. Apr. 6, 2011).

In the present case, the Plaintiffs allege that a fiduciary relationship arose once the Debtor and Nader Homes became insolvent. In addition, they argue that the Debtor used Nader Homes's business account to pay for personal expenses. Although Wells Fargo disbursed the funds as instructed by the Plaintiffs, there is a genuine dispute of material fact as to whether the Plaintiffs' money was misappropriated and thus, summary judgment for the Debtor as to Plaintiffs' section 523(a)(4) claims is denied.

## V.     Plaintiffs' § 523(a)(6) Claims

Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is nondischargeable. 11 U.S.C. § 523(a)(6). The term "willful" governs not only actions taken with the intent to cause an injury, but also actions that have a "substantial certainty of producing injury." *In re DiGiovanni*, 446, B.R. 709, 716 (Bankr. E.D. Pa. 2001); *see In re Conte*, 33 F.3d 303, 309 (3rd Cir. 2001). However, with regard to the term "malicious," the Third Circuit, in bankruptcy nondischargeability proceedings, has interpreted it to refer to "injuries that are wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *In re Coley*, 433 B.R. 476, 498 (Bankr. E.D. Pa. 2010) (requiring no showing of specific malice under section 523(a)(6)).

Here, the Plaintiffs argue that the Debtor caused them willful and malicious injury by misrepresenting his education, the experience of his employees, and prior job performances, all of which are claims disputed by the Debtor. Since there is a genuine dispute of the material facts as to whether the Debtor's alleged misrepresentations regarding his education, qualifications, experience, and job performance could cause a substantial certainty of injury, Debtor's motion for summary judgment is denied.

## **CONCLUSION**

The Court finds that there are genuine disputes of material fact with respect to Plaintiffs' claims under sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) and accordingly, the Debtor's motion for summary judgment is denied. The Debtor's motion for summary judgment as to the Plaintiffs' state law claims pertaining to the CFA and an "alter ego" theory is granted.

An Order in conformance with this Opinion has been entered by the Court and is attached hereto.

*s/ Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: May 8, 2012